# Shuman *against* Reigart.

The discharge and assignment of an insolvent debtor vests in his assignees the distributive share of an intestate estate to which he is entitled in right of his wife after the death of the widow.

WRIT OF ERROR to the District Court of *Lancaster* county.
This was an action of debt upon a recognisance in the Orphans' Court by Champneys, President of the Orphans' Court, &c., for the use of Emanuel C. Reigart, against Christian Shuman, surviving co-cognisor, &c. The facts were, that Christian Stoner died intestate, seised of a tract of land which, by a proceeding in partition, was sold by an order of the Orphans' Court to Christian Herr, who sold to Christian Shuman, who entered into a recognisance on the 21st August 1811, conditioned for the payment of the interest of $9729.38 annually to the widow, and of the principal sum at her death to the children, of whom Nancy, intermarried with Daniel Neff, was one. On the 16th December 1822 Daniel Neff was discharged as an insolvent debtor, having made an assignment to Abraham Herr for the benefit of his creditors. On the 19th January 1826, Nancy, the wife of Daniel Neff, died, leaving issue five children. On the 17th September 1831, Abraham Herr, the trustee, sold the share of Daniel Neff, in right of his wife, of the money secured to be paid on the death of the widow, at public sale, to Emanuel C. Reigart, for $420. On the 18th October 1841, the widow died. The only question in the cause was, whether the share of Daniel Neff in right of his wife passed under his insolvent discharge and assignment to his trustee, so as to enable the plaintiff to recover in this suit.

HAYES (President) was of opinion that it did pass to the trustee, and that the plaintiff was entitled to recover.

· *Findlay*, for plaintiff in error, cited 2 *Penn. Rep.* 355; 2 *Kent Com.* 138; 2 *Story Eq.* 634, § 1413, 1405; 2 *Roper Hus. and Wife* 509.

*Parke,* contra, cited 1 *Penn. Rep.* 373; 2 *Serg. & Rawle* 491; 11 *Serg. & Rawle* 377; 1 *Rawle* 279; 2 *Kent Com.* 137; 5 *Johns. Chan.* 196—210; 4 *Rawle* 481; 3 *Russel* 65; 3 *Rawle* 199; 5 *Whart.* 138; 4 *Yeates* 79; 1 *Bin.* 358.

The opinion of the Court was delivered by

GIBSON, C. J.—The inconvenience which induced the Legislature to dispense with an insolvent debtor's formal assignment, induced them to dispense with no part of its operation in practice. It had sometimes happened that the trustee died or would not accept, whence a necessity for further assignment, the property often being left for a time in the control of the debtor; to avoid which, it was thought preferable to vest the title at once by force of the statute itself. The wife's interest therefore passed to the trustee on the principle of *Richwine* v. *Hearn,* and her survivorship was barred by the principle of *Siter's* case.

The solidity of the latter has been disputed in the argument; but I believe we all concur that it has so far become a rule of property as to preclude us from disturbing it, were we so disposed, for the sake of an hypothesis. For myself, it is proper to remark, that nothing which has been said here or elsewhere has shaken my confidence in the soundness of it, and that I am unable to perceive the force of Sir THOMAS PLUMER's argument in *Purdew* v. *Jackson,* which is thought by Mr Clancy to have overthrown the previous English decisions as being unanswerable on principle, but which is more accurately thought by him to be as applicable to the wife's choses presently reducible to possession, as to her choses in reversion. If, as supposed, he has overthrown them as to the one class, he has as certainly overthrown them as to the other. And on what ground? On that of a supposed technical incongruity. The foundation of his argument is, that marriage gives the husband a distinct but inchoate title of his own; and that, when he assigns her chose before reduction of it to possession, he assigns, not her title to it as the instrument of her power, but his own inchoate title, and no more; the fallacy of which is proved by the fact that he must join her in an action to recover it. If he had a separate title to the thing, he could recover separately on it; but as he cannot recover without joining her, as he would in an action for a wrong purely personal, he recovers on her right, not his own: consequently, he recovers her property, not his own. But I mean not to repeat the arguments used in *Siter's* case. Sir THOMAS seemed to think in *Purdew* v. *Jackson* that reduction to possession enlarges the husband's ownership, and bars the wife's survivorship, by some sort of technical legerdemain, as a common recovery bars an entail, and for reasons not less inexplicable. But when a train of decisions are to be overturned for the sake of a theory, it ought to be plainly founded

[Shuman v. Reigart.]

on incontrovertible principles of technical reason. I conclude with remarking that the principle of *Siter's* case is to be considered the law of the land.

Judgment affirmed.